UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARLANDUS M. NOLEN,

        Petitioner,

v.                                                Case No. 2:06-cv-223
                                                 HON. R. ALLAN EDGAR

GREG MCQUIGGIN,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

        Petitioner Arlandus M. Nolen filed this petition for writ of habeas corpus challenging the validity of his major misconduct guilty findings for prisoner in possession of a weapon, disobeying a direct order, and substance abuse. Petitioner alleges that his due process rights were violated during the hearing process because he was found guilty without sufficient evidence to support the findings.

        Petitioner sought judicial review in the Ingham County Circuit Court. Respondent's motion to dismiss was granted because the misconduct tickets were supported by competent evidence. The Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's appeal.

        Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States

Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find

a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

In the opinion of the undersigned, petitioner is not entitled to habeas relief because his misconduct hearings did not violate the constitution. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not bound by state or

federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.*  Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed. *Id.*  Petitioner has failed to show that his constitutional rights were violated at his misconduct hearing.

Moreover, the hearing officer's conclusions that Petitioner was guilty of the misconduct charges were supported by the record.  The hearing officer found on the disobeying a direct order and possession of a weapon charges that:

> Prisoner requested a policy directive on shake down procedure, which is irrelevant to the charge, finger prints, to which he is not entitled, copy of the grievances prisoner Nolan wrote prior to the incident, which are irrelevant.  Prisoner makes a complaint against the hearing investigator, noting that she did not read his questions back to him, that she walked off in the middle of the interview.  The hearings investigator, however, provided all of the materials requested by prisoner if relevant and necessary.  The hearing officer obtained prisoner Boone's responses to prisoner's questions he submitted at hearing. The Hearing Investigation Report notes that the prisoner was very argumentative in his interview.  I find that a sufficient investigation was accomplished in order for a fair hearing to be held. 029 The Misconduct Report is convincing in detailing that when Lt. told prisoner to give him his gloves, prisoner did not.  Prisoner then ran away and dropped a 7" sticker on the ground.  Hearing Officer viewed photo of evidence and is convinced that the evidence, which was 7" in length, with a pointed, sharpened edge, made of metal, was an item designed or intended to be used to cause or threaten physical injure to another person, and that prisoner possessed it.  Prisoner never denied, in his hearing, or in his writings submitted to the Hearing Officer that he possessed the "sticker."  The video shows a prisoner running around a can, where the sticker was found.  Prisoner said the grievance was to show that there is a dangerous situation in the facility, that the Lt. walked up to a situation where he could have put the prisoners and the lieutenant in danger.  That indicates that prisoner did have the sticker, as the sticker would add danger to the situation.  The evidence may be given to the Michigan State Police.
>
> 020 The Misconduct Report is convincing in detailing that the Lt. told prisoner to give him his gloves.  Prisoner heard the officer, as evidenced by the video showing prisoner next to the Lt.  Prisoner

> voluntarily failed to comply with the order by not giving the Lt. his gloves. Prisoner's witnesses say that he complied with the Lt., but reporter is clear in describing how prisoner dropped one glove when he went around the trash can, and the other glove was given to Officer Justinak. Prisoner's compliance with Officer Justinak was not timely compliance with the Lt's order to give the Lt. the gloves.

Similarly, on the substance abuse charge, the hearing officer concluded:

> Prisoner is guilty of the charge. I find that the prisoner's footlocker had been locked by him prior to his leaving the unit at OCF. It was then secured almost immediately by staff following his being taken to control. (During the intervening time no other prisoner could have opened his locker as he had locked it). The seals were applied. They were not removed until the property got to AMF. The prisoner was stored at OCF during that time. It was then examined here at AMF prior to giving it to the prisoner. In an envelope in his footlocker was found marijuana which is a prohibited and illegal substance. This was determined to be marijuana by a test kit. The prisoner's claim he was set up is not persuasive. It is not likely that he would be set up to get rid of him. He was being locked up at the time on a weapon possession charge. (Substance abuse is a bondable charge). Also it is not likely that marijuana, which is a valuable substance in a prison setting, would be used to set up a prisoner when other items could be used, especially on a bondable charge. The prisoner, I conclude, had marijuana in his locker and had it in there prior to being locked up by facility in September. The marijuana was then not discovered until the property was shaken down. Property is not routinely scrutinized as carefully when it is being packed as the prime concern then is to gather and itemize and secure it.

It is clear that Petitioner received due process of law, and that he cannot support any claim that his constitutional rights were violated during the misconduct hearings. Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner

received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985). In the opinion of the undersigned, Petitioner has failed to show that his constitutional rights were denied.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Petitioner cannot show that his due process rights were violated during the misconduct ticket and hearing process. In the opinion of the undersigned, there existed some facts to support the guilty misconduct ticket

findings.  Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:  April 1, 2009